First case we have this morning is O'Malley v. Adams, 524-0094. For the appellant, Mr. Solvinger. Okay, very good. You may proceed when you're ready. May it please the Court, my name is Richard Solvinger and I'm here on behalf of my client, a plaintiff, counter-defendant, Patrick O'Malley, Jr., not individually, but as trustee of what's known as the O'Malley Trust. Your Honors, to review in this case, obviously, at length in preparation for today, it is apparent to me that the appellees concede that the Court did not follow the requirements necessary under the Code of Civil Procedure or the Attachment to an Act in order to order a pre-judgment attachment or to issue an injunction. Well, do we have an attachment or an injunction here? Your Honor, I think we have both. I think it qualifies as both. The orders attach proceeds for the sole purpose of holding those proceeds if or when there's a judgment entered against the trust. They are not proceeds that are in dispute. The proceeds from the sale of the farm, there's no dispute that those belong to, they were owned by the O'Malley Trust and the beneficial interest in those surface rights was owned by Mary Judith, who's not even a party to this litigation. They attached and froze those proceeds to be held and set aside until a final judgment is issued. I'm not sure if we have an attachment that we have jurisdiction. If there is an attachment, Your Honor, let me point out that the Court has held that if an order is entered, no matter what it's called, that has the effect of being either an attachment or an injunction, then that's what it is and there's jurisdiction pursuant to Rule 307A1. I apologize, I didn't mean to interrupt you. Rule 307A1 deals with the nature of an injunction. Are you sure that it deals with an attachment as well? An attachment can be appealed because any orders pursuant to attachment that are not followed, if the rules of an attachment act are not followed, those orders are void. And any orders that are considered void are also appealable to this Court. So either either road you go down, we're properly before this Court. Your Honor, you asked me a question. I want to make sure I answer it. Is it an attachment or is it an injunction? It's both because the order required Mr. O'Malley, Jr. to put funds into an account, the sales proceeds, and then enjoined him from distributing them to Mary Judith, who's the rightful owner, as the beneficial interest. So it has the both. Yet, Your Honor, as I think the appellee's counsel will concede, there was no the court of civil procedure wasn't followed. There was no evidentiary hearing. There were no findings of fact. There was no proof that the appellee had an inadequate remedy of law or would suffer irreparable harm. As far as an attachment, there was no affidavit provided. There was no bond posted. None of this was followed. And the appellees can see this. And what they're suggesting to Your Honors today is that this was administrative in nature. It was ministerial. So because of that, the court of civil procedure didn't have to be followed. And, in fact, this Court doesn't have jurisdiction. How can that be? How can that be that these are administrative or ministerial in nature where the first and effect of these orders is to attach proceeds that are not in dispute and hold them aside until after a trial? And that's exactly what the court said, the lower court said, is that these need to be set aside for the purpose of satisfying potentially a judgment down the line. That's an attachment. And those are, I think the word is respectfully abhorred by the courts to issue any type of attachment or an equitable attachment unless the specific use of the funds are in dispute. That's what happened in Philip Morris. In the Philip Morris case, there were specific funds in dispute that the state and the attorneys were fighting over. That's okay. These are just funds that are being set aside to potentially satisfy a judgment down the line. If the court is going to go down that road, there are certain procedural hoops that have to be jumped through. And no one will dispute that those weren't jumped through in this case. So how can they be administrative or ministerial in nature where the court actually stated in its August order that the primary asset of the O'Malley Trust are the proceeds from the sale of the surface rights. And the court said the primary asset of the O'Malley Trust from which an eventual judgment may be satisfied in whole or in part is the surface of the land proceeds from the sale of the land. That's why it's an attachment. And there are certain... The rules of attachment weren't really followed. I don't know how you can categorize them as both. The rules of attachment, Judge, and I want to be clear, were not followed because they should have been. And that's why the orders are void. If something is an attachment, then the rules of the attachment act need to be followed, and they weren't. And if this is an injunction, which it also is, then the court can issue that injunction. We don't dispute that a sheriff didn't go out. We don't dispute no affidavit was provided. We don't dispute that a bond wasn't provided. All of that had to be provided. You can't get the effect of an injunction or an attachment without following the code of civil procedure. And appellees rely heavily on the Illinois Uniform Fraudulent Transfer Act. At the time these orders were entered, there was no claim that had been made under that act. There was no pending action. But the point that I want to illustrate for the court is that under the IUFTA, it even indicates that some of the remedies that can be available if you assert a cause of action under the Fraudulent Transfer Act is an attachment. An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the code of civil procedure. So if they had filed an action, if there was a pending fraudulent transfer claim, and they wanted the relief that they ultimately obtained, they could have said, Judge, we're filing a motion pursuant to 8A2. It's specifically provides for an attachment. They didn't do that. The Fraudulent Transfer Act also specifically provides for an injunction under 8A3A. Again, subject to the applicable principles of equity and in accordance with the applicable rules of civil procedure. They didn't do that. Instead, after the fact, they attempt to squeeze what they're saying, 8A3C, any other relief of the circumstances may require. That's what they are saying that this order was pursuant to. However, their motion doesn't mention that section. The court that issued the order doesn't mention that section. The law that they rely on that section, when it applies, applies in the context of punitive damages. They do not cite any case law where any court used that provision to freeze funds or enjoin funds because that's not what that provision is for. It's a catchall for other circumstances where the act specifically provides for an attachment or injunction. They have effectively frozen funds and prevented funds being distributed to someone who's not before Your Honor. Mary Judith is not a party before this court, yet she is prevented from receiving funds. There are necessary hurdles that had to be jumped over in order to accomplish the ultimate relief that the court issued. That just did not happen. And this is why the court procedure has checks and balances before you freeze any funds and prevent them from being distributed or used by parties during the course of a litigation, which could take another year or two and then be subject to appeals. Your client admitted that some of the funds that went into the savings plan were derived from the mineral rights, though, correct? That is correct. Why wouldn't those funds be subject to attachment or injunctive relief? Two points, Your Honor, if I may. One, the circuit court's October order froze all of the funds in that savings plan. And it was clear that while some of those funds, we don't disagree, I think the amount at issue is about $280,000 were from the sale of mineral rights. But that savings plan, which is a retirement plan, contains funds from the profits of Mr. Romali Sr.'s law firm. So, A, not just a small portion was frozen. All of the money in the savings plan was frozen. That's number one. And number two, Your Honor, to your point, why can't, you know, they do just that portion, I'm not suggesting one way or the other that that would be the end result. But you still have to follow the Code of Civil Procedure to get there. And if that was done and all the findings were made and then the court issued, after hearing the evidence, a limited attachment and then an affidavit been provided and a bond, then I'm not having this conversation. But that wasn't done. So they froze 100 percent of the monies in that savings plan, even though there was a small percentage that was even at issue. And again, the Code of Civil Procedure was not involved in doing that. Do you think that savings plans or retirement funds, such as your client had, can be frozen or are they exempt? Your Honor, under the Code, retirement plans, by definition, are supposed to be exempt under 1006 of the Code of Civil Procedure. I think when you have a situation here where if there is an undermarked portion of the funds, right, and those are in dispute and all the checks and balances are crossed, I think it would be disingenuous for me to argue to this Court that that small amount, because you couldn't take money that was otherwise in dispute and maybe could be attached and say, well, we tossed it in here and now it can't be. So I don't want to make that argument. I don't think it's credible. But those were facts that we never got into evidence through an evidentiary hearing. So if everything was done appropriately and that's what the findings of fact were, Your Honor, an appropriate affidavit and bond were issued, that's a different set of circumstances that are not before this Court. But make no mistake, the sales proceeds, those were the legal title to the land that was owned by the trust and the beneficial interest was owned by Mary Judith. There is no dispute over who owns those funds. The appellees just wanted that set aside under the assumption that someday we'll win and we want to make sure there's money there. That's a completely different set of circumstances than a small amount of funds that are in dispute arising out of the sale of the mineral rights. So I'll make sure that that distinction is clearly made. There was no evidentiary hearing in either August or October? Correct. There was a motion pending that was oral argument and there were rulings that were issued by the Court in August and October of 2022. We filed a motion to dissolve those injunctions that was heard in December of 23. That motion was denied. But the motion was brought under the Transfer Act. No, the motion, Your Honor, was brought for miscellaneous relief. It was not brought under the Transfer Act. And the ruling by the Court was not pursuant to the Transfer Act or to this 183C, this other relief. This is what the appellees have cited in their briefs as where it would fit under. But you won't find that provision in any of the orders that were issued, Your Honor. Okay. Thank you. I think I'll reserve the rest of my time for rebuttal as the light is flashing and I can make further points then if that's okay with the Court. We don't see the light, so that's fine. To coin a phrase, I think I have seen the light, Judge, so I'm going to reserve the rest of my time. Thank you. All right. Yes, you'll have a few minutes after Mr. Cox. Thank you. Thank you for listening. Mr. Cox, he says you concede that there's certain procedural things that were not followed. No. Actually, I don't concede that, Judge. First of all, let me apologize for my voice. The golden rod is in full bloom. I can't, it sores my throat, but I'll do my best to make myself heard. If I'm not, please let me know. So what they say, Judge, is that this should have been brought as a separate cause of action and have an evidentiary hearing. The motion was brought under the Act. It specifically mentions the Act. The judge's order specifically mentions the Act. It makes findings with respect to facts. We presented evidence attached to our motion of what happened here, the transfer of the surface and the transfer of monies from the savings plan to a Swiss bank account. Now, I know this court is very familiar with this case and the facts of what happened, because I was here not long ago in the Chicago title case, so I know the court knows the facts. I won't repeat them. But so does the judge in the circuit. In the circuit court, the judge knows very well about Patrick O'Malley and the very different things he's done. So they say this has to be brought in a separate cause of action. They present no authority for that except the Act that says in an action for relief. There's no case out there that says it has to be brought in a separate complaint. Also, they have the opportunity to ask the court to hold an evidentiary hearing, but didn't. They relied just solely on their response. And in their response, they don't call this an attachment. They call it a sequestration of funds. So here we took action by bringing Moses to the court to make the court aware of it, presented documentary evidence to prove it, which the court found they did. There was no request for an evidentiary hearing, and there was no suggestion at the time of the entry of these orders that they should be brought in a separate, completely separate cause of action. But in an abundance of caution, Judge, we have filed a separate action with respect to the savings plan funds. There's an account on file, allowed by the court, on that issue. And depending on the outcome of this appeal, we intend to also join in that claim the part about the surplus. Let me correct something. They say that there is no dispute that Mary Judith owns the beneficial interest to the minerals. We dispute that heavily, and that was brought out in our motion. Here's what happened. This suit started in 2016. At that time, Patrick was the beneficial owner of the minerals. He then, in 2017, while this case is pending, he transfers ownership of that to his wife, an insider, for no compensation at all. He just gave it to her, just transferred it to her. And the important thing about that is he kept that secret from 2017 all through the time of the motion that they brought in 2023. So that whole time he kept it secret, although he should have disclosed it in pursuant to our discovery request. He kept it secret. Why? Because he knew he shouldn't have done it. Because it was an illegal, fraudulent transfer of funds that he owned at a time when he was being sued. And so there's a big dispute about her ownership of those and whether or not that was appropriate. As a result, the real issue here is whether or not it is appropriate for the circuit court to sequester the funds, which is a word they use, to sequester the funds separately until there can be a hearing on it. That's really the issue. In terms of an attachment, I don't know where that argument comes from. All of us here know exactly what an attachment is. It's a statutory process by which you follow certain steps. You get an order issued to the sheriff to go take the property and hold it until the court decides. This was not an attachment. It wasn't even close to an attachment. It wasn't intended to be an attachment. It was intended to be an action under the Act for the fraudulent transfer of assets. Now, in the appellant's brief... Absolutely. And that's what we did. We specifically identified that in the motion. That's correct. We did not have a count on file, nor did we believe we needed to, nor did the judge believe we needed to. There's no case that says there must be a separate cause of action account filed for an action under the... But it does say an action for relief. It is. It's a motion for relief. It actually does say that, use the word action. Right. If you're simply proceeding under the Fraudulent Transfer Act, and you have no count on file, but you have a motion with attachments, are we now into an injunction in the nature of an injunction? I'm trying to find out whether we have jurisdiction. I don't think you do have jurisdiction, and we've said this in our brief, because it wasn't an injunction. What it was is sequestration, which they call it, and we call it, and the judge calls it sequestration. You put it into an account that you own, and you just leave it there until we sort this thing out. But you told them they can't do anything with it, so I'm not sure the sequestration, as you call it, is any different than an injunction. Well, there are cases we've cited in our brief where they talk about allowing the court to put, to have the money held separately, and it could be paid into the court, in the Philip Morris case it was, or it could be held by the, actually by the debtor in a separate account, which is what happened here. The court didn't take control of the money, rather said, we're sequestering it, leave it there. I understand, Judge, that that sounds somewhat like an injunction. The judge didn't call it an injunction, she didn't intend an injunction, because she just said put it in an escrow account, separately, and just leave it there until, so that's what a sequestration is. In what case would you have me go look at that distinguishes between a sequestration and an injunction? There are no cases. I can't find any case that spoke to that very issue. I do see cases, and we've cited them in our brief, where it talks about sequestration and that being an appropriate remedy, and it calls it something different than an injunction. But that's under the fraudulent transfer act. I don't think, I don't want to say I'm not certain. Would you agree, Mr. Cox, that if this is an injunction, if it's a preliminary injunction, for which you had a complaint on file, if it's in the nature of a preliminary injunction, then at least there was no evidentiary hearing on either occasion, other than the exhibits that were attached to your motion. Right. That's correct. There was never a request, well, first of all, O'Malley never asked or said, this has to be a separate cause of action at the time the orders were entered. Never brought that to the court's attention. But on the motion to dissolve, they did when the court had our motion. They did. And then, at the same time, they didn't ask for an evidentiary evidence. They didn't even dispute that he had moved almost all the money out of the savings plan into a Swiss bank account. The Swiss bank account, that's kind of a misnomer. It was U.S., wasn't it U.S.B. Bank? It is a Swiss bank. Yeah, but, I mean, it has branches all over the United States. But the, and I did want to address the, since we're on this topic, the exemption. There is a dispute about the money that's in, that was in the savings account, which was moved to the bank in Switzerland. And so the money from the sale of the minerals, and I think the court knows this from our prior case, was being put, all the money was being put into the account, the savings plan. And part of that money belongs to us. We don't know exactly how much because it has to be determined by the court. We know what evidence we're going to present. And then there's prejudgment interest and so on. So I'm not certain what the final number's going to be. But there's no question that minerals, that belonged to us, half of the minerals, that money was put into that account. This is the analogy I think of. Maybe it's not a good one, but I think it is. If I steal a car and I sell the car and I get the money for the car and put it in my savings plan, an exempt account, is it exempt? No, because it never belonged to the debtor. And actually the exemption statute says it's exempt from attachment, which didn't happen here. So we're just saying you have our money in that account and you're transferring it out of your savings plan to some other bank. We didn't even know that until this came about. And so we're just saying preserve the status quo, sequester the money until we can determine the amount to sell and have the court decide. The judge here is a very careful judge. He doesn't have an account on file for the Fraudulent Transfer Act claim? For the savings plan? For the savings account, but not as to the beneficial interest for the property? When you see the motion, it actually arises from that transfer, which we didn't know about until this happened recently. But it's all tied up with that transfer of the beneficial interest. The savings plan, Judge, is not tied to the surface transfer. That's a separate issue. But it is tied to the monies that came from the sale of minerals that went into the savings plan have now been moved to another account. I'm not sure exactly what the nature of that account is, but it's a different account. And so the judge here was trying very hard to preserve the status quo, to preserve the status quo. And so we filed, out of preventative caution, a separate account on the savings plan. We also intend to add in a claim on the transfer of the beneficial interest, now that we have that information. That depends on whether this court decides there must be a separate cause of action for this type of claim. And if it does, we will file it and add it to what we have already. So with respect to the savings plan, we're just looking at the time period from now until the court hears that case on the savings plan. She's already ruled that on the proceeds of the sale of the service, that that was a fraudulent transfer. Has she ruled that it's a fraudulent transfer or has she just maintained the status quo? She ruled that there was a claim pending and that there was a transfer that is a fraudulent transfer. So we believe she's made a decision on that. And that is now being attacked as inappropriate because they say it should be implied as separate. Now they say that. Which order did she rule? Was it the October or the August order where she ruled that it was fraudulent? I'm sorry, I'll move. That the transfer of the beneficial interest was a fraudulent transfer. Was that the August 10th or the October 14th? She addressed that, I believe, in the August order. And she doesn't, I will tell the court, I don't think she uses the word fraudulent transfer. She refers to the Act and says there was a claim pending. She defines that and there was a transfer, which is, she's talking about a fraudulent transfer under the Act. I don't think she uses the word fraudulent transfer. She defines it as a transfer within the meaning of the Act. Within the meaning of the Act, yes. I see my time is up. I'm happy to answer any further questions you may have. No questions. Thank you, Your Honor. Just briefly, Your Honors. I have to point out an interesting phrase that counsel used about the judge preserving the status quo. I think in my years of practicing, I've heard that phrase often, always in connection with a hearing for an injunction. And the judge made no findings that it was a fraudulent transfer. There was no evidentiary hearing. There was no trial. Mr. Cox respectfully is arguing the merits of his case that haven't yet been heard by the court, as if it's already been decided. And Your Honor, I think, accurately pointed out to take a look at the August order. There's three points in the court's granting. One, and I'm paraphrasing, the O'Malley Trust is a party. Two, counter plaintiffs have a quote claim. That's not me doing your quotes. That's how the judge put those quotes in her order. There was no pending cause of action, pending before her. She heard oral argument and believed that there is a quote claim against the O'Malley Trust within the meaning of the Uniform Fraudulent Transfer Act. There was no finding that there was a fraudulent transfer, nor could there be. No, but she did find there was a transfer. And so she obviously believed that the Illinois Uniform Fraudulent Transfer Act was before her, probably from the motion that was filed. Well, if that was her belief, Judge, then that takes you back to what a claimant with an actual pending cause of action can obtain under Section 8. And one of those is an attachment. Another one is an injunction pursuant to the Code of Subvert Procedure, and then you have the other relief under C. And that's what they're relying on now, because they recognize that the judge didn't have an evidentiary hearing, didn't make findings of fact of irreparable harm, lack of an adequate remedy of law, and we would have strenuously objected to any such findings. The problem I have with your client is the judge also found that there was a claim under the Transfer Act in her August order. She found there was a claim. She found that there was a transfer. Your client waited six months before making any objection to this. In fact, at one point, the client didn't have any objection to holding the O'Malley parties advised the court they have no objection to the stay requested by counter plaintiffs and that the mineral interest of the O'Malley Trust will not be transferred during the pendency of this litigation. That was the October 14th order. I think that was with regard to the mineral interest, Judge, and what's being frozen in addition to the whole that have nothing to do with mineral rights, and then you also have the proceeds from the sale. There is no dispute that the private trust never had an ownership interest in the proceeds from that sale. All they're trying to do is to freeze those funds, enjoin the use of those funds, until such time as there's a final judgment. Those aren't in dispute as do we have some, do you have some, even if they went back. Let's just jump ahead. I know I'm out of time. Even if they, down the line, they went back, they don't have an interest. That literature is funds that they think they want to have available if they get a judgment down the line on other causes of action. They don't have a right to those actual funds. That's exactly why that we say that it really served effectively as both an attachment and an injunction. The judge forced them to put those monies into account and then said, don't touch it. There is no supporting law for the judge to do that in the manner, respectfully to the court, in the manner that she effectively did that. And there's a code of civil procedure that needed to be followed, and it simply wasn't followed in this case. These were not funds that were paid into the court. They called it a sequester. It was an injunction. It was a prejudgment attachment, Your Honor. Do you have a question? Let's suppose these orders are bound to be, I don't want to use the word void, but let's suppose that this court finds that the procedures were not properly followed and that the Injunctive Relief Act would have been the more appropriate or the Illinois Uniform Fraudulent Transfer Act. Aren't we just spinning our wheels here by asking the court to go back through the same process that's already gone back through in order to allow Mr. Cox to add account and then do the same thing over? So I would say two things, Judge. We're never spinning our wheels to have the court and the party attempt to get the relief they may want through the appropriate means. We would absolutely object and put on evidence that would prevent, we believe, any proper injunction of the proceeds from the sale or any injunction of freezing 100% in a savings plan where most of the money in there is profits from a law firm. So we respectfully would not be spinning our wheels. Number one, it needs to go through the proper procedural mechanism. And two, we don't think that the court would issue any injunction when presented with all of the evidence. And it's not for Mr. Cox and I to argue the evidence today. That's not what's before the court. This is a procedural matter. That's an argument that, you know, perhaps for another day. But what's before this court, which the court is jurisdiction over, is to find that those orders were improperly issued. Lack of a better term, Judge, maybe there's not a better term, void. And this needs to go back down and then we'll see what happens in the circuit court from there. But that's what's before the court today. I thank you for your time. If you have any other questions, Judge, I'm happy to answer them. Thank you. It's a pleasure to be before this court. First time here for me. Thank you, Judge.